UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION AT ASHLAND

GREGORY A. WHYTE,         )
                                     )
       Petitioner,        )  Civil Action No. 0:16-CV-1-HRW
                                       )
v.                                )
                                     )
JODIE SNYDER-NORRIS, *Warden*,    )  **MEMORANDUM OPINION**
                                     )       **AND ORDER**
       Respondent.       )
                                       )

****     ****     ****     ****

Petitioner Gregory A. Whyte is confined by the Bureau of Prisons ("BOP") in the Federal Correctional Institution ("FCI")-Ashland, located in Ashland, Kentucky. Proceeding without an attorney, Whyte has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241, challenging his prison disciplinary conviction at another BOP facility which resulted in the loss of one hundred nine (109) days of his vested and non-vested good-conduct time ("GCT"). Whyte seeks an order expunging that disciplinary conviction and reinstating his forfeited GCT.[1] Whyte has paid the $5.00 filing fee. [D. E. No.1-8]

---

[1] According to the BOP's website, Whyte, BOP Register No. 28330-037, is projected to be released from federal custody on July 6, 2021. *See* https://www.bop.gov/inmateloc/ (last visited on July 19, 2016).

1

In conducting an initial review of habeas petitions under 28 U.S.C. § 2243, the Court must deny the relief sought "if it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief." Rule 4 of the Rules Governing § 2254 Cases in the United States District Courts (applicable to § 2241 petitions pursuant to Rule 1(b)). Because Whyte is not represented by an attorney, the Court evaluates his petition under a more lenient standard. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Burton v. Jones*, 321 F.3d 569, 573 (6th Cir. 2003). Thus, at this stage of the proceedings, the Court accepts as true Whyte's factual allegations and liberally construes his legal claims in his favor. As explained below, however, Whyte's habeas petition will be denied because he has not alleged facts supporting his assertion that his disciplinary conviction should be expunged, or that his GCT should be reinstated.

## BACKGROUND

On September 5, 2014, Whyte was confined at the Federal Correctional Center ("FCC")-Petersburg Low, located in Hopewell, Virginia. On September 6, 2014, "B." Bragan, Special Investigative Services ("SIS") Lieutenant at FCC-Petersburg Low, prepared an Incident Report ("IR") charging that on September 5, 2014, as 12;12 p.m., Whyte violated three BOP Prohibited Act Codes ("PAC"): (1) Possession of a hazardous tool (PAC 108 violation); (2) Escape from a non-

2

secure facility and return within four (4) hours (PAC 200 violation); and (3) Possession of a non-hazardous tool (PAC 331 violation).  [D. E. No. 1-2, ¶ 9] Lieutenant Bragan described the incident as follows:

> On 09-05-2014 at approximately 12:12 PM, staff called for assistance upon observing a camp inmate running towards FCC Petersburg on military property adjacent to FCC Petersburg property.  Responding staff apprehended the inmate inside the woods of the Institution property line.  A search of the inmate and the area he was apprehended in revealed a black Alcatel cellular telephone and two packets of cigarettes. The inmate was later identified as inmate Whyte, Gregory, Reg. No. 28330-037.

[D. E. No. 1-2, ¶ 11]

Another FFC-Petersburg Low officer delivered the IR to Whyte on September 6, 2014, at 8:21 a.m.  [*Id.*, ¶¶ 12-13]  Five days later, on September 11, 2014, Bragan revised the IR to include the following additional information about the alleged events of September 5, 2014.  The Revised IR states:

> On 09-05-2014 at approximately 12:12 pm staff called for assistance upon observing a camp inmate running towards FCC Petersburg on military property adjacent to FCC Petersburg property. Responding staff member J. Smith observed inmate Whyte, Gregory Reg. No. 28330-037, crouched down inside the woods of the Institution property line. Garage Foreman J. Smith gave inmate Whyte a direct order to come to him, at which time he observed inmate Whyte stand up and drop a black object.  Once inmate Whyte came to Garage Foreman J. Smith he restrained him and directed responding staff member W. Mcgrath to the area just 10 feet away to recover the object Whyte had dropped.  Plumbing Foreman W. Mcgrath recovered a Black cellular telephone from the area identified by Garage Foreman J. Smith.  A search of inmate Whyte revealed a pair of black ear buds with a built in microphone.  After plugging these ear buds into the

3

black cellular telephone it was discovered that these ear buds were
compatible and operable with the cellular telephone. Additionally,
two packets of Newport cigarettes were found hidden inside of inmate
Whyte's socks.

[D. E. No. 1-3, ¶ 11 ("Description of Incident")]

FCC-Petersburg Low Officer "J." DelValle-Sojo delivered the Revised IR to

Whyte on September 11, 2014, at 8:28 a.m. [*Id.*, ¶¶ 12-13] The IR and the

Revised IR were forwarded to the FCC-Petersburg Low Unit Disciplinary

Committee ("UDC") for review. [*Id.*, Part II-Committee Action] Whyte denied

the disciplinary charges, *see id.*, ¶ 17, but the UDC determined that Whyte had

committed the offenses and referred the charges to a Disciplinary Hearing Officer

("DHO") for resolution. [*Id.*, ¶¶ 18-20] On September 26, 2014, a disciplinary

hearing transpired at FCC-Petersburg Low, over which DHO "W." Bennett

presided. On October 29, 2014, Bennett prepared a five-page Report summarizing

all aspects of the hearing, and on November 13, 2014, the Report was delivered to

Whyte. [D. E. No. 1-4, p. 5, § IX ("Discipline Hearing Officer")]

The DHO Report reflects that Whyte's staff representative, Case Manager

Hawkins, made the following argument on Whyte's behalf: "Being that the phone

was found in the woods and not on the person how can they connect the phone to

him?" [*Id.*, p. 1, § II (E)] Bennett's Report states that Whyte acknowledged

receipt of a copy of the IR; that he understood his rights before the DHO; and that

4

he "...did not raise any issues or concerns with the discipline process to this point." [*Id.*, § III (B) ("Summary of inmate statement")]

The DHO Report states that Whyte made the following initial statement: "I'm guilty for the cigarettes. I'm not guilty for the escape and cellphone." [*Id.*] According to Bennett's Report, Whyte requested no witnesses. [*Id.*, § III (C) ("Presentation of Evidence")] The Report states that in addition to the IR and the Investigation, the DHO considered the following documents: (1) four photographs of inmate, cellphone, and cigarettes depicted in Section 11 of the incident report; (2) the [FCC-Petersburg Low] Warden's September 19, 2014, Memorandum explaining the delay of UDC Hearing; (3) the medical assessment of inmate depicted in Section 11 of the incident report; (4) the Memorandum submitted by "J." Smith, Garage Foreman; (5) the September 5, 2014, Memorandum submitted by "P." Rhyne, Maintenance Foreman; (6) the September 5, 2014, Memorandum submitted by W. Mcgrath, Plumbing Foreman; (7) the Memorandum submitted by "C." Bassfield, Maintenance Foreman; and (8) the September 5, 2014, memorandum submitted by SIS Lieutenant "B." Bragan. [*Id.*, p. 2, § III (D)]

DHO Bennett determined that based on the greater weight of the evidence, Whyte was guilty of all three of the PAC offenses as charged in the IR and the Revised IR. [*Id.*, § IV; *see also*, *id.*, pp. 2-3, § V, "Specific Evidence Relied on to

5

Support Findings"]   DHO Bennett based his conclusions on SIS Lieutenant Bragan's allegations as set forth in both the IR and the Revised IR; the numerous supporting memoranda submitted by other FCC-Petersburg Low officials, all of which collectively pointed to Whtye's guilt as to all three charged disciplinary violations;[2] the photographs of Whyte, the cellphone and the cigarettes; the discovery of cigarettes in Whyte's socks and an ear-piece in Whyte's pant pocket; and Whyte's own admission that he possessed Newport cigarettes. [*Id.*]

DHO Bennett stated that he considered Whyte's statement that he was guilty of possessing cigarettes but not of escape and possessing a cellphone, but determined that Whyte did in fact possess a hazardous tool (a cell phone) while running on the Fort Lee property adjacent to the FCC-Petersburg Low premises; that Whyte's "partial-guilt" defense--that he possessed the cigarettes but that he did not commit the two other charged offenses--was insufficient; and that the reporting officer had no reason to fabricate the allegations contained in the IR and Revised IR. [*Id.*, p. 3]  DHO Bennett explained that the prohibited actions of an inmate possessing a cell phone in a correctional environment, attempting escape, and possessing tobacco products constituted disruptive behavior; threatened the health,

---

[2] The DHO's summarized the corroborating memoranda submitted by Plumbing Foreman "W." Mcgrath; Garage Foreman "J." Smith, and Maintenance Foremen "P." Rhyne and "C." Bassfield. *See* D. E. No. 1-4, p. 3.

6

safety and welfare of all inmates; and created inmate control issues for prison administrators. [*Id.*, p. 4]

DHO Bennett imposed numerous sanctions in connection with the three offenses, consisting of one hundred nine (109) days of forfeited GCT and ninety (90) days of disciplinary segregation. On the possession of a hazardous tool (PAC 108 violation) offense, DHO Bennett ordered the forfeiture of 41 days of GCT and 27 days of non-vested GCT; 60 days in disciplinary segregation; the loss of telephone privileges for a year; and the loss of visitation for 18 months. [*Id.*, pp. 3-4, § VI "Sanction or Action Taken"] On the escape from a non-secure facility and return within four (4) hours offense (PAC 200 violation), DHO Bennett disallowed 27 days of Whyte's GCT; ordered Whyte to serve 30 days in disciplinary segregation; and suspended his telephone and commissary privileges for 60 days. [*Id.*, p. 4] On the possession of a non-hazardous tool (PAC 331 violation) offense, DHO Bennett disallowed 14 days of Whyte's GCT and suspended his commissary privileges for 6 months. [*Id.*]

In his report, DHO Bennett noted two delays in the disciplinary process. First, the DHO noted he had been delayed in preparing his Report due to "... increased caseload, leave and additional duties." [*Id.*, p. 2] Second, the DHO noted that the UDC's findings had been delayed beyond the established time

7

frames, but concluded that the delay did not impair Whyte's due process rights. [*Id.*, pp. 2-3]  On the issue of the UDC hearing, the DHO further observed that the "… incident report was delayed due to administrative error…,"[3] but that the delay did not prevent Whyte from defending himself.  [*Id.*, p. 3]

Whyte filed a BP-10 appeal to the BOP's Mid-Atlantic Regional Office ("MARO"), in which he alleged that his due process rights were violated because the UDC hearing was not conducted in a timely manner and because the reason for the delay documented on the Request for Extension memo was fabricated.  *See* MARO appeal, D. E. No. 1-3, p. 2.  On December 15, 2014, J. F. Caraway, Regional Director of the BOP's Mid- MARO denied Whyte's BP-10 appeal, finding that DHO's findings were accurate, adequate, and based on "some facts."

Caraway noted that where conflicting evidence existed, the DHO must base his decision on the greater weight of the evidence, but concluded that DHO Bennett had based his decision on the greater weight of the evidence.  [D. E. No. 1-6, pp. 1-3]  Caraway identified the that evidence as being the reporting officer's statement contained in Section 11 of IR and the Revised IR, and the supplemental memoranda filed by other FCC-Petersburg Low officials, all of which indicated

---

[3] The DHO's statement on this issue is imprecise and somewhat confusing, but reading the statement in context, the DHO presumably was noting that that the "preparation" of the IR had been delayed.

that Whyte possessed a cell phone, earbuds to that cell phone, and cigarettes, while he was attempting to go beyond the boundaries of the prison yard. [*Id.*, p. 1]

Caraway also fully addressed, and rejected, Whyte's argument that the UDC's delay in issuing its findings, beyond the five-day time-frame suggested in the applicable BOP regulation, violated his right to due process. Caraway stated:

> The reason for the delay was due to the fact the incident report was rewritten. The rewrite was necessary to ensure you were provided with adequate notice of the charge against you. Further review, indicates the Warden's approval was obtained for the process to continue. You do not provide, nor do we find, any evidence that your defense of the charge against you was hindered in any way due to this brief delay. Moreover, the UDC did not make a finding, but referred the incident report to the DHO for final disposition.

[*Id.*, p. 1][4]

Caraway determined that the required disciplinary procedures were substantially followed; that the evidence supported the conviction; and that the sanctions were appropriate for the offense. [*Id.*]

On February 20, 2015, Whyte appealed the MARO's decision to the BOP Central Office, arguing that the delay of the UDC hearing, beyond the specified

---

[4]  Caraway stated that the Warden of FCC-Petersburg Low consented to the delay in the UDC hearing.  On September 19, 2014, Angela Thompson, FCC-Petersburg Low Unit Manager, submitted a written request to Warden Eric D. Wilson, seeking permission to conduct the UDC hearing past the five-day limit specified in BOP Program Statement 5270.07, *Inmate Discipline and Special Housing*. [D. E. No. 1-6, p. 3]  Tomlinson explained that the alleged incident occurred on Friday, September 5, 2014; that the UDC heard the IR on September 8, 2014; and that the DHO sent the IR back for a rewrite on September 10, 2014, at which time the IR "…was placed back in pending UDC by DHO to be heard." [*Id.*]

time-frame, had denied him due process, and that the IR was "…based primarily on **HUMAN ERROR**." [D. E. No. 1-7, pp. 1-2 (emphasis in original)]   Whyte also argued that he was entitled to "Discovery" and "Evidence," including but not limited to "…Certified Copy of all Investigative and Testing performed on the alleged cell phone…." [*Id.*, p. 2]   Whyte does not allege that he received a response and/or denial from the Central Office, nor does he attach such a response, but assuming that he did not receive a response, the lack of a response constitutes a denial of a final appeal. *See* 28 C.F.R. § 542.18 ("If the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level.")   Whyte filed this § 2241 petition on January 5, 2016.

## CLAIMS ASSERTED IN THE § 2241 PETITION

Whyte seeks an order setting aside his disciplinary conviction and reinstating his forfeited GCT.   Whyte four arguments in support of his § 2241 petition.   First, Whyte argues that the UDC's failure to issue its findings of fact in a timely manner violated his right to due process guaranteed by the Fifth Amendment of the U.S. Constitution.   Whyte states that the incident occurred on September 5, 2014, and that first UDC report was issued on September 6, 2014, but that it was re-written on September 11, 2014, thus violating the five-day time-

frame established in BOP Program Statement ("PS") 5270.09, *Inmate Discipline Program*, and 28 C.F.R. § 541.7.  Second, Whyte alleges that he was denied notice of the escape charge (PAC 200 violation).  Third, Whyte challenges the accuracy of the incriminating allegations contained in the IR, the Revised IR, and the supporting memoranda submitted by the other FCC-Petersburg Low officials.  Whtye disputes every aspect of those officials' versions of the events of September 5, 2014, claiming that their  summaries of what they observed were impossible time-wise, were factually inaccurate and unreliable, and that the DHO denied him due process by basing his finding of guilt on those allegations and disregarding his version of the events.

Fourth and finally, Whyte alleges that he was denied crucial evidence necessary to prove his innocence of the PAC 108 possession of a hazardous tool/cell phone charge.  Specifically, Whtye asserts that the cell phone discovered in the woods should have been fingerprinted, opened, and examined to determine if the phone numbers called from it "coincided" with the numbers on his approved call list.  Whyte seeks an order expunging his disciplinary conviction from his BOP record and reinstating his 109 days of forfeited GCT.

## DISCUSSION

Whyte has not alleged any type of due process violation which would entitle him to the habeas relief which he seeks in this proceeding.  In *Wolff v. McDonnell*, 418 U.S. 539 (1974), the United States Supreme Court explained that when a prison disciplinary hearing may result in the loss of good conduct time credits, due process requires that the inmate receive: 1) written notice of the charges at least 24 hours in advance of the disciplinary hearing; 2) a written statement by the fact finder as to the evidence relied on and reasons for the disciplinary action; 3) an opportunity to call witnesses and present documentary evidence in his or her defense when doing so would not be unduly hazardous to institutional safety or correctional goals; and 4) the assistance of staff or a competent inmate when the inmate is illiterate or when the issues are complex.  *Wolff*, 418 U.S. at 564-566. All of these requirements were met in Whyte's case.

Whyte's first claim, that the UDC issued its findings past the recommended five-day time-period recommended in the applicable BOP regulation, and thus violated his due process rights, simply lacks merit.  PS 5270.09, *Inmate Discipline Program* (July 8, 2011; Effective Date: August 1, 2011), mirrors the language of 28 C.F.R. § 541.7(d), and states in relevant part:

> (c) **Timing. The UDC will ordinarily review the incident report within five work days after it is issued, not counting the day it was issued, weekends, and holidays.  UDC review of the incident**

12

> **report may also be suspended if it is being investigated for possible criminal prosecution**.
>
> The Wardens approval is required for any extension beyond five work days. The UDC will ensure the approval is documented and included in the discipline packet. The time that an incident report is suspended for referral to another agency for possible prosecution is not included in this five work day time frame. The time line commences when the incident report is released from the outside agency for administrative processing. However, the inmate should be advised of the delay, and if appropriate, the reason for the delay.

BOP PS 5270.09, at p. 24.

This Court, and other district courts in this circuit, have addressed the issue of whether a delay in a UDC review of an Incident Report violates a federal prisoner's right to due process, and have consistently concluded that even if such delay occurred, it does not amount to violation of due process, particularly where, as here, the Warden has documented and excused the delay of the UDC's review of an incident report. In *Slater v. Holland*, No. 0:11-CV-86-HRW 2012 WL 1655985 (E.D. Ky. May 10, 2012), the prisoner challenged the delay in the UDC's review and disposition of his incident report, just as Whyte does in this § 2241 proceeding. This Court rejected that argument, noting that the time-requirements applicable to UDC review are merely recommendations set forth in the BOP regulation, and are not mandated by the U.S. Constitution.[5] *Id*. at *6.

---

[5] In *Slater*, this Court explained why the UDC's delay was not a due process violation:

Further, the regulation (28 C.F.R. § 541.7) provides the BOP some flexibility in scheduling a UDC hearing, the use of the phrase "ordinarily" in the regulation implies that the five day time-frame is more of a guideline than a hard and fast deadline. *See, e.g., Howard v. Beeler*, No. 90-C-271, 1992 WL 67830, at *3 (N.D. Ill. Mar.24, 1992) (discussing prior version of applicable BOP regulation which provided for a UDC hearing within three days of the issuance of an incident report); *Estrada v. Williamson*, 240 Fed. App'x 493 (3rd Cir. 2007) (UDC hearing held six days late did not violate due process); *Bader v. Eichenlaub*, 2009 WL 2568530, at *2 (E.D. Mich. Aug. 17, 2009) ("In this case, the reason for the delay, a staff shortage, was documented in the hearing record and constitutes good cause. Accordingly, the court finds that petitioner's due process rights were not violated by the two-day delay in conducting the hearing"); *Booth v. Patton*, No. 08-CV-2-

---

As with Section 541.15(a), Section 541.15(b) also indicates that an initial UDC hearing should ordinarily be held within 3 days; therefore, holding an initial hearing after that period does not necessarily indicate noncompliance with the regulation. Section 541 .15(b) does not state that the initial UDC hearing **must** be held within 3 work days, and it does not require dismissal of the charged violation if a UDC hearing is held outside of the 3–day time-frame; it simply specifies that the UDC hearing should ordinarily be held within 3 work days. **Thus, noncompliance with the time requirements of Section 541.15(b) is not a due process violation, as the requirements of that section are not mandated by the Constitution. Therefore, the BOP's failure to adhere to them fails to state a constitutional claim under the Due Process Clause....** Consequently, Slater has failed to state a due process claim as to the delay in his initial appearance before the UDC.

*Slater*, 2012 WL 1655985 at *6 (emphasis added) (citation omitted).

HRW 2009 WL 1636391, at *3, n.1 (E.D. Ky. June 10, 2009) (holding that even if inmate demonstrated noncompliance with the time requirements of § 541.15(b), he stated no due process claim because the requirements of that section were not mandated by the Constitution, and the BOP's failure to adhere to them failed to state a constitutional violation); *Thibodeau v. Watts*, No. 1:CV-05-2502, 2006 WL 89213, *4 (M.D. Pa. Jan.11, 2006) (hearing held four days late did not violate due process); *Cabrera v. Veach*, No. 06-1139, 2006 WL 2547985, *3 (C.D. Ill. Aug. 31, 2006) (failure to comply with the three-day rule did not violate due process).

To the extent that Whyte alleges that the BOP ignored its own program statement and other internal policies with respect to the timing of the UDC's review and referral of charges to the DHO, he states grounds entitling him to habeas relief.  The requirements of procedural due process are defined by the United States Constitution, not by an agency's internal regulations or guidelines. *Sandin v. Conner*, 515 U.S. 472, 485 (1995).  Thus, an agency's alleged failure to adhere to its own policies or guidelines does not state a due process claim. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541, (1985); *Smith v. City of Salem, Ohio*, 378 F.3d 566, 578 (6th Cir. 2004); *Slater*, 2012 WL 1655985, at *5. That is because prison regulations are "primarily designed to guide correctional officials in the administration of a prison. [They are] not designed to confer rights

15

on inmates...." *Sandin*, 515 U.S. at 481-82; *see also Jones v. Cross*, 637 F.3d 841, 846 (7th Cir. 2011) (holding that noncompliance with timing provisions of 28 C.F.R. § 541.15(a) and (b) did not violate inmate's due process rights because those prison regulations do not "shield inmates from an 'atypical or significant hardship ... in relation to the ordinary incidents of prison life'" and thus do not give rise to independent liberty interest protected by due process) (quoting *Sandin*, 515 U.S. at 484)).   In summary, Whyte has not established a due process violation based on the fact that the UDC did not review the Revised IR until September 11, 2014, at which time the UDC referred the charges to DHO Bennett for disposition.

Whyte's second argument--that he was denied notice of the escape charge (PAC 200 violation)--is groundless and requires little discussion.   The Escape charge and PAC 200 are specifically identified in Sections 9 and 10 of both the IR [D. E. No. 1-2] and the Revised IR [D. E. No. 1-3].   Further, Section 11 the Revised IR [D.E. No. 1-3] contains more than adequate information explaining the factual basis for the escape charge, and it was delivered to Whyte on September 11, 2014, at 8:28 a.m.   The DHO hearing did not transpire until fifteen (15) days later, on September 26, 2014, which means that Whyte had ample notice of the escape charge (and the facts underlying same), and ample opportunity to prepare his defense to the Escape charge at the DHO hearing.

16

Whyte again fails to state any grounds justifying habeas relief with respect to his third argument, in which he challenges the sufficiency of the evidence upon which the DHO relief in convicting him of the three charged offenses. Whyte claims that the IR, the Revised IR, and *all* of the supporting memoranda contained factually inaccurate information and accounts of the alleged events which would have been chronologically and/or physically impossible, but Whyte fails to understand that only "some evidence" (not proof beyond a reasonable doubt) is needed to support a disciplinary conviction in a prison setting. Here, "some evidence" of Whyte's guilt existed, in the form of the investigating officer's claims contained in the IR, the Revised IR, and the many supporting memoranda filed by other FCC-Petersburg Low officials, all of which corroborated the IR and the Revised IR. That evidence, which Whyte hotly disputes, was sufficient to justify the DHO's finding that Whyte committed all three of the charged offenses.

As *Wolff* indicates, a DHO's decision to forfeit good time credits need not comport with the requirement of proof beyond a reasonable doubt which applies in criminal trials; the DHO need only base his or her decision on "some" evidence, or, the evidence is conflicting, on "the greater weight of the evidence," 28 C.F.R. § 541.8(f). *Superintendent v. Hill*, 472 U.S. 445, 455–56 (1985); *see also Kelley v. Warden, F.C.I. Elkton*, No. 4:13-CV-662, 2013 WL 4591921, at *5 (N. D. Ohio,

17

Aug. 26, 2013) ("Although the evidence in this case might be characterized as limited, a DHO's finding does not rely on the same amount of evidence necessary to support a criminal conviction.") The "some evidence" standard requires only that the "disciplinary decision is not arbitrary and does have evidentiary support." *Superintendent v. Hill*, 472 U.S. at 457.

In *Hill*, the Supreme Court declined to adopt a more stringent evidentiary standard as a constitutional requirement, stating: "Prison disciplinary proceedings take place in a highly charged atmosphere, and prison administrators must often act swiftly on the basis of evidence that might be insufficient in less exigent circumstances. The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact." *Hill*, 472 U.S. at 456.

The "some evidence" standard is a lenient one, and requires only that the "disciplinary decision is not arbitrary and does have evidentiary support." *Hill*, 472 U.S. at 457. Even meager proof will suffice. *Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000); *see also Williams v. Bass*, 63 F.3d 483, 486 (6th Cir. 1995). A district court has no authority under the guise of due process to review the resolution of factual disputes in a disciplinary decision; its role is not to re-try a prison disciplinary hearing, weigh the evidence, or independently assess witness

credibility. *Hill*, 472 U.S. at 455; *Humphreys v. Hemingway*, 77 F. App'x 788, 789 (6th Cir. 2003). Further, the evidence need not logically preclude any conclusion but the one reached by the hearing officer in the disciplinary proceeding. *Falkiewicz v. Grayson*, 271 F.Supp.2d 942, 948 (E.D. Mich. 2003).

Whyte admits that he possessed cigarettes in violation of BOP policy, but vehemently protests his guilt as to the escape and possession of the cell phone charges. Even so, the law is clear that a DHO need not accept what the inmate perceives to be the "best" or most convincing or persuasive set of facts. *See Sarmiento v. Hemingway*, 93 F. App'x 65, 68 (6th Cir. 2004) (affirming the DHO's determination that the greater weight of the evidence supported his decision finding Sarmiento guilty of "tampering with a security device" in violation of PAC 208, even where the facts were in dispute); *Johnson v. Patton*, No. 06-CV-HRW, 2006 WL 950187, at *5 (E.D. Ky. April 12, 2006) ("While these facts are not one hundred percent conclusive of whether the petitioner violated Code 108, they are adequate facts upon which to base a prison disciplinary conviction. They constitute "some" facts upon which the DHO was entitled to rely in finding the petitioner guilty of violating Code No. 108.") This Court's role is not to weigh the credibility of the evidence or substitute its judgment for that of the DHO. The IR, the revised IR, and the other prison officials' memoranda constituted "some" evidence upon

which DHO Bennett could reasonably rely in finding Whyte guilty of the three offenses and imposing sanctions, including the forfeiture of 109 days of GCT.

Whyte's fourth and final argument, that the cell phone discovered in the woods should have been fingerprinted, opened, and examined to determine if the phone numbers called from it "coincided" with the numbers on his approved call list, also lacks merit. Again, the DHO's decision need not comport with the requirement of proof beyond a reasonable doubt, the standard applicable to criminal trials. *Wolff*, 418 U.S. at 556 ("Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply."); *Miles v. USP-Big Sandy*, No. 7:11-CV-58-KSF, 2012 WL 1389274, at *3 (E. D. Ky. Apr. 20, 2012) (citing *Wolff*). Further, a prisoner also has no protected due process right in either obtaining outside scientific or laboratory testing of evidence to be used against him, *see Wolff*, 418 U.S. at 566–67,[6] or requiring the prison to find, retain, and present an expert

---

[6] This and other courts have rejected claims by federal prisoners who demanded outside scientific or forensic testing to rebut evidence used against them in a disciplinary hearing. *See, e.g., Cato v. Ives*, No. 12-CV-193-GFVT, 2013 WL 1856101, at *5 (E. D. Ky. Apr. 30, 2013) (rejecting § 2241 petitioner's assertion that an incriminating letter should have been analyzed by handwriting and fingerprint experts); *Outlaw v. Wilson*, 2007 WL 1295815, at *2 (N. D. Ind. Apr.30, 2007) (inmate had no right to require creation of favorable evidence in the form of handwriting analysis or lie detector test results); *Manfredi v. United States*, 2012 WL 5880343, at *6 (D.N.J. Nov.20, 2012) (rejecting prisoner's claim that the DHO violated his due process rights by denying his request to obtain a second, independent laboratory test of evidence used against him at disciplinary hearing); *Allen v. Purkett*, 5 F.3d 1151, 1153 (8th Cir.1993) (*per curiam*) (holding that prison officials were not required to provide additional urinalysis by impartial laboratory to corroborate reports about prisoner's drug use); Rivas v. Cross, 2011 WL

witness on his behalf in the disciplinary proceeding. *Garrett v. Smith*, 180 F. App'x 379, 381 (3d Cir. 2006). Thus, Whyte's assertion that the cell phone discovered in the woods should have been fingerprinted, opened, and subjected to further examination, simply lacks merit.

Based on the foregoing discussion, Whyte is not entitled to relief from his disciplinary conviction, the expungement of that conviction from his BOP record, or to the restoration of his 109 days of forfeited GCT. His § 2241 habeas petition will be denied.

## CONCLUSION

Accordingly, for the reasons discussed above, it is hereby **ORDERED** as follows:

1.     Petitioner Gregory A. Whyte's 28 U.S.C. § 2241 petition for a writ of habeas corpus [D. E. No. 1] is **DENIED.**

2.     The Court will enter an appropriate Judgment.

3.     This habeas proceeding is **DISMISSED** and **STRICKEN** from the Court's docket.

This July 28, 2016.



Signed By:
*Henry R. Wilholt, Jr.*
United States District Judge

---

1601289 at *7–8 (N.D.W.Va.Apr.1, 2011); *Batista v. Goord*, 2005 WL 2179420 (N.D.N.Y. Aug. 28, 2005) (inmate had no due process right to have substance re-tested at an outside laboratory).